UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 13-0097 JGB (OPx) | Date | September 27, 2013 |
|---|---|---|---|
| Title | *Linda Hoover v. Hi-Tech Pharmacal Co., Inc.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Doc. No. 14) (IN CHAMBERS)

On December 12, 2012, Plaintiff Linda Hoover ("Plaintiff") filed a class action Complaint in state court against Defendant Hi-Tech Pharmacal Co., Inc. ("Hi-Tech") alleging that Hi-Tech falsely advertises its homeopathic drug Nasal Ease as able to relieve allergy symptoms. ("Compl.," Not. of Removal, Doc. No. 1, Exh. A.) On January 15, 2013, Hi-Tech removed the case to this Court. (Not. of Removal.) Before the Court is Plaintiff's Motion for Preliminary Approval of Class Action Settlement filed on August 23, 2013. ("Motion," Doc. No. 14.) Defendants do not oppose the Motion and do not oppose class certification for settlement purposes. (Doc. No. 15.) The Court held a hearing on the Motion on September 23, 2013. For the reasons stated below, the Court GRANTS Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

## I. BACKGROUND

### A. The First Amended Complaint

Plaintiff filed a First Amended Complaint on July 9, 2013. ("FAC," Doc. NO. 11.) The FAC alleges that Hi-Tech manufactures and sells Nasal Ease, a product which it claims relieves allergy symptoms such as sneezing, sinus congestion, and runny nose. (FAC ¶ 11.) Plaintiff contends that Nasal Ease's ingredients have never been scientifically substantiated as being able to treat allergies or the symptoms thereof, and Hi-Tech's statements about Nasal Ease are false

and misleading. (FAC ¶ 1.) Plaintiff brings an action on behalf of Nasal Ease purchasers who spent approximately $11.99 on the product based on the false advertising. (FAC ¶¶ 15-16.)

Based on these facts, Plaintiff states three claims for relief for: (1) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; and (3) unlawful, fraudulent, and unfair business practices in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. (FAC ¶¶ 26-54.)

**B. The Settlement**

On June 14, 2013, the parties reached a settlement. (Doc. No. 10.) On August 15, 2013, the parties and their representatives executed a Class Action Settlement Agreement. ("Settlement," Declaration of Ryan M. Ferrell ("Ferrell Decl."), Exh. 1, Doc. No. 14-4.) For purposes of Settlement, the class is defined as "all persons within the United States, who purchased Nasal Ease for personal use between April 1, 2010 and the Opt-Out Date, and were domiciled or resided in United States at the time of purchase." ("Class" or "Settlement Class," Settlement ¶ 1.6.) The parties propose that the Opt-Out Date be 60 days after notice of the Settlement is first published in a newspaper of general circulation.[1] (Settlement ¶¶ 1.27, 1.25.)

The benefits of the Settlement include both injunctive and monetary relief. In terms of injunctive relief, Hi-Tech agrees to modify the label and packaging of Nasal Ease to include the following disclaimer: "These statements are based on traditional principles of homeopathy." (Settlement ¶ 4.1.2.) The Settlement also provides a refund to any member of the Class who makes a claim within the Claim-In Period.[2] (Id. ¶ 4.2.1.) The refund constitutes either (1) a full refund of the amount shown on a receipt provided by claimant or (2) a refund of $5.00 per unit purchased, up to a maximum of $15.00 per household, for any claimant who does not provide a receipt but affirms under penalty of perjury that he or she purchased Nasal Ease during the class period. (Id. ¶ 4.2.3.)

**C. Claims Process**

The Settlement proposes that within 30 days after the Court grants preliminary approval, the Claims Administrator will implement a Notice Plan, at Hi-Tech's expense, which consists of a consumer media campaign designed to reach purchasers of the approximately 300,000 units of Nasal Ease sold during the class period. (Settlement ¶ 5.5.3; "Notice Plan," Ferrell Decl., Exh. 2, Declaration of Michel E. Moore, Doc. No. 14-2.) Methods of notice include direct mail, a toll-free number, a case website, magazine and newspaper publications, an internet and social media campaign, and a press release. (Notice Plan at 2-5.)

Once a class member receives notice of the Settlement, he or she submits a Claim Form either in writing or electronically on the Settlement website. ("Claim Form," Settlement, Exh.

---

[1] As set forth below, the Court modifies this deadline.

[2] The Claim-In Period is between the Notice Date and the Opt-Out Date.

A.) On the Claim Form, a class member provides information, including the purchase date, price, store name, store location, and receipt, if available, for each purchase of Nasal Ease within the class period. (Id.) After verification, payment will be made directly to the class member by first class mail no more than six months after judgment is entered. (Settlement ¶ 4.2.4.) A class member must submit the Claim Form by the Opt-Out Date. (Settlement ¶ 4.2.1.)

Plaintiff moves the Court to certify the class for settlement purposes and to grant preliminary approval of the Settlement.

## II. LEGAL STANDARD[3]

A court may certify a class if the plaintiff demonstrates that the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). See Fed R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on ground that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b). Courts have added to the federal rules a prerequisite that the class be ascertainable. In re Northrop Grumman Corp. ERISA Litig., No. cv-06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011).

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Court approval occurs in three steps, the first of which is a preliminary approval hearing. See Manual for Complex Litigation (Fourth) §§ 21.632 (2012). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

## III. DISCUSSION

---

[3] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

### A. Certification of the Proposed Class

#### 1. Requirements of Rule 23(a)

##### a. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient but need not be impossible. Keegan v. American Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, forty or more members will generally satisfy the numerosity requirement. Id.

Here, it is known that approximately 300,000 units of Nasal Ease were sold during the class period. (Settlement ¶ 4.2.1.) Even if some class members purchased more than one unit, the aggregate number of units sold suggests that the class size would significantly exceed forty and is likely in the tens of thousands.

##### b. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2556 (2011).

The commonality question is satisfied because every class members' claim turns on identical conduct by Hi-Tech and resulted in the same injury. Nasal Ease packaging, labeling, and advertising was uniformly presented to all potential class members and represented that it would relieve allergy symptoms, including sneezing, sinus congestion, and runny nose. (Motion at 11.) These representations caused the class members the same injury in that they lost money or property by purchasing Nasal Ease which they would not have purchased but for Hi-Tech's false and misleading representations. (Id.) Determining that Hi-Tech misrepresented the efficacy of Nasal Ease on its labels resolve an issue common to all of the class members' claims.

##### c. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover N. Am., 617 F.3d 1168, 1175 (9th Cir. 2010). Typicality is a permissive standard. Hanlon, 150 F.3d at 1020. The claims of the named plaintiff need not be identical to those of the other class members. Alonzo v. Maximus, Inc., 275 F.R.D. 513, 523 (C.D. Cal. 2011).

The named plaintiff suffered substantially the same alleged injury as the other class members. Plaintiff purchased Nasal Ease because she believed it would provide the allergy


symptom relief claimed on the packaging. (FAC ¶¶ 2, 15.) All class members purchased Nasal Ease and suffered a financial injury in the amount of the purchase price of Nasal Ease, approximately $10.00, stemming from Hi-Tech's uniform misrepresentations on Nasal Ease packaging. (Motion at 12.) Each class members' injury was the result of the same conduct on the part of Hi-Tech. Further, the same legal theory underlies the claims of all the class members, namely violations of the UCL, CLRA, and FAL.

### d. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and his counsel have any conflicts of interest with any class members and whether the proposed class representative and his counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Ms. Hoover has no conflicts of interest with any members of the class. (Motion at 12.) Her interests are unified with the class in that they all suffered losses from the same conduct on the part of Hi-Tech. She thus has an incentive to pursue redress for the injuries of the whole class. (Id.) Class counsel, Newport Trial Group, has litigated four other cases involving the efficacy of homeopathic drugs in which the court granted class certification. (Id.) Counsel's experience litigating consumer class actions and their time spent researching Nasal Ease and the applicable law satisfies the adequacy of representation prong.

### e. Ascertainability

Ascertainability is satisfied when it is "administratively feasible for the court to determine whether a particular individual is a member" of the proposed class. In re Northrop Grumman, 2011 WL 3505264, at *7 n. 61.

Here, the class definition uses objective criteria that are verifiable from the submitted Claim Forms. Submission of a receipt or attestation of purchase under penalty of perjury confirms whether or not an individual is a class member.

### 2. Requirements of Rule 23(b)

Plaintiff alleges that the Settlement satisfies the requirements listed in Rule 23(b)(3). (Motion at 13.) Rule 23(b) requires issues common to the whole class to predominate over individual issues and also requires that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3).

First, Rule 23(b)(3) asks whether the proposed class is sufficiently cohesive to warrant adjudication by a class action. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998). A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id.

Predominance is "readily met in certain cases alleging consumer . . . fraud." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997); In re First Alliance Mortg. Co., 471 F.3d 977, 992 (9th Cir. 2006). No separate adjudication is required to resolve individual claims. The central question is whether Hi-Tech falsely represented that Nasal Ease has uses and benefits which it does not have. A determination of this central issue will resolve the claims of all class members. Although class members may be entitled to different amounts of reimbursement, those amounts can be determined by straightforward accounting. See Johnson v. Gen. Mills, Inc., 275 F.R.D. 282, 285, 287, 289 (C.D. Cal. 2011) (holding that similar common questions predominated and thus certifying consumer class action under California's UCL and CLRA).

To satisfy the Rule 23(b)(3) requirement, a class action must also be superior to other methods of adjudication for resolving the controversy. See Fed. R. Civ. P. 23(b)(3). To determine superiority, courts consider factors such as the individual class members' interest in controlling the litigation of separate actions, whether there is any pre-existing litigation of the controversy, the desirability of concentrating the litigation of the claims in the particular forum, and any difficulties that may arise from maintaining a class action. Wolin, 617 F.3d at 1175; Fed R. Civ. P. 23(b)(3). Where parties seek class certification for settlement purposes only, courts need not consider the final two factors which address trial manageability. Franco v. Ruiz Food Products, Inc., No. 1:10-cv-02354-SKO, 2012 WL 5941801, at*9 (E.D. Cal. Nov. 27, 2012).

The alternative method of resolution of the class claims, namely individual claims for a small amount of damages, would burden the judiciary and be inefficient. There is no evidence that members of the proposed class are aware of the allegations that Hi-Tech made misrepresentations on Nasal Ease. The Court is unaware of any ongoing litigation of this issue. Moreover, class members do not stand to recover more than the amount they paid for the product. This factor weighs in favor of certification since it is unlikely that individual litigation would be worth the expense. Because the parties seek class certification for settlement purposes only, it is unnecessary to consider the final two factors.

Based on the foregoing, the Court approves for settlement purposes certification of a "Settlement Class" defined as:

> "All persons within the United States, who purchased Nasal Ease for personal use between April 1, 2010 and the Opt-Out Date, and were domiciled or resided in the United States at the time of purchase."

### B. Preliminary Approval of the Settlement

At the preliminary approval phase, a court need only decide whether the settlement is potentially fair. Acosta, 243 F.R.D. at 386. To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003). After the class members have been

notified of the Settlement and been given an opportunity to object, the Court will hold a formal fairness hearing to determine whether the Settlement is fair, reasonable, and adequate. See Manual for Complex Litigation (Fourth) §§ 21.632-34 (2012).

At this preliminary stage, the Court finds the Settlement is fair. Plaintiff faced risks in maintaining this action. Plaintiff was prepared to file a class certification motion, but faced legal hurdles, including a challenge to her standing to seek injunctive relief. See Delarosa v. Boiron, No. 10-cv-1569-CBO (CWx) (C.D. Cal. 2010). Moreover, in order to prevail at trial, Plaintiff would have to prove that members of the public are likely to be deceived by Hi-Tech's advertising, which would require a fact intensive inquiry. See Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 134 (2007). Plaintiff also faced the substantial hurdle of proving that she was not proceeding on a "lack of substantiation" theory, which a private plaintiff cannot pursue under California consumer protection law. See In re Clorox Consumer Litig., 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012).

A class certification trial can be long, complex, and expensive. Hi-Tech would likely have opposed class certification absent a settlement agreement. (Motion at 7.) Settlement will conserve the resources of the Court and parties.

The Settlement is a result of arm's length negotiations between the parties. On April 15, 2013, after a number of negotiation sessions, the parties formulated the skeleton of a settlement of this action. The parties stipulated to stay the case pending further negotiations. (Doc. No. 9.) On June 14, 2013, the parties reached a settlement in principle and filed a notice indicating the same. (Doc. No. 10.) The parties did not discuss attorneys' fees until after they agreed to the class benefits. (Ferrell Decl. ¶ 4.)

The Settlement was only entered into after Plaintiff's counsel conducted a thorough investigation into the nature and size of the class and determined the fairness of the class recovery. (Ferrell Decl. ¶ 4.) Class Counsel, Ryan M. Ferrell and Scott J. Ferrell of Newport Trial Group, have experience litigating class actions and negotiating substantial settlements. (Ferrell Decl. ¶¶ 2-9.)

The Settlement offers Plaintiff and the class monetary relief through multiple avenues of recovery, regardless of whether the purchaser retained his or her receipt. Class members will also benefit from injunctive relief in the form of changes to Nasal Ease's label. The class members have not received notice of the Settlement nor had time for comment, therefore the Court cannot evaluate their reaction to the Settlement. However, given that the Settlement awards class members between approximately 50 and 100 percent of their costs in purchasing Nasal Ease, the Court believes this is preliminarily adequate for settlement purposes.

The above factors support the preliminary approval of the settlement.

### C. Notice Plan and Fairness Hearing

Rule 23(c)(2)(B) requires that that Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). Where the identity of specific class members is not reasonably available, notice by publication is an acceptable method of providing notice. See In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Nasal Ease is sold at retail locations throughout the country; therefore, Hi-Tech does not possess contact information for the majority of class members. Thus, the primary means of notice must be by publication. See In re Tableware Antitrust Litig., 484 F. Supp. 2d at 1080 ("Because defendants do not have a list of potential class members, the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the Lenox settlement.").

Pursuant to the Settlement, notice will consist of publication in print and via the internet, including inserting the notice in the USA Today, Health Magazine, and Natural Health Magazine, internet banner advertisements on websites and social media sites, on the case website, and in an informational press release. (Motion at 15.)

Pursuant to the parties' agreement and the Court's calendar, the Court SETS the following dates[4]:

| Notice Date | October 28, 2013 |
| --- | --- |
| Deadline to File Motions for Final Approval, Attorneys' Fees, Costs, and Incentive Award | January 13, 2014, to be noticed for hearing at the Final Approval Hearing |
| Opt-Out Date[5] | February 25, 2014 |
| Deadline to Respond to Objections | March 14, 2014 |
| Final Approval Hearing | Monday, March 24, 2014 at 9:00am |

### IV. CONCLUSION

The Court hereby conditionally certifies the class solely for the purpose of settlement, appoints Linda Hoover as the Settlement Class Representative, appoints Newport Trial Group as

---

[4] As used below, all terms correspond to those used by the parties in the Settlement Agreement.

[5] This date is also referred to as the end of the "Claim-In Period" in the Settlement. It is the deadline for Class Members to object to the Settlement and to Plaintiff's Motion for Attorneys' Fees, Costs, and the Incentive Award, to opt-out of the Class, or to file a claim. The Court extended this date beyond what was required in the Settlement, as the Court finds that 60 days is an unreasonably truncated period of time to provide notice to all of the unknown class members and for them to submit Claim Forms.

Class Counsel, and orders dissemination of notice to the Settlement Class. The Court GRANTS Plaintiff's Motion for Preliminary Approval of Class Action Settlement and ORDERS as follows:

1. The following Settlement Class is preliminarily certified for settlement purposes only:

    "All persons within the United States, who purchased Nasal Ease for personal use between April 1, 2010 and the Opt-Out Date, and were domiciled or resided in the United States at the time of purchase."

2. Plaintiff Linda Hoover is qualified to act as a representative of the Settlement Class and is preliminarily appointed as Settlement Class Representative.
3. The Court appoints Ryan M. Ferrell and Scott J. Ferrell of Newport Trial Group as Class Counsel.
4. The Court appoints CPT Group Class Action Administrators as the third-party Claims Administrator. The Claims Administrator will carry out the Notice Plan as defined in Exhibit 2 to the Declaration of Ryan Ferrell and in the Declaration of Michael E. Moore.
5. The Court approves the proposed manner of the notice of Settlement set forth in the Settlement Agreement, Notice Plan, the Declaration of Michael E. Moore, and any modifications made by the Court herein. The Court also approves the size and contents of the Claim Form, Full Notice, and Summary Notice. (Ferrell Decl., Exh. 1, Exhs. A-C.) The Court finds that the proposed manner of the notice of Settlement constitutes the best notice practicable under the circumstances.
6. Class Members will have until the Opt-Out Date, as defined above, to exclude themselves from the Settlement. Class Members may opt out by timely sending a written request to the Claims Administrator postmarked no later than the Opt-Out Date. Class Members who timely opt out of the Settlement: (a) will have no right to receive the monetary relief of the Settlement Agreement; (b) will not be bound by the terms of the Settlement Agreement; and (c) will not have any right to object to the terms of the Settlement Agreement, or to be heard at the final approval hearing before the Court.
7. Any Class Member, on his or her own, or through an attorney hired at his or her own expense, may object to the terms of the Settlement Agreement. Any such objections must be filed with the Court and also served on Class Counsel and counsel for Defendant. To be effective, any such objections must be in writing, and must be filed and served no later than the Opt-Out Date. Any objections not properly and timely raised will be waived.
8. Any Class Member, on his or her own, or through an attorney hired at his or her own expense, may object to the Settlement Class Representative's application for an incentive award or to Class Counsel's motion for an award of attorneys' fees and costs. Class Counsel's motion for an award of attorney's fees and costs will be posted on the Case Website no later than January 13, 2014. Any objections to the Settlement Class Representative's application for an incentive award and/or to Class Counsel's motion for an award of attorneys' fees and costs must be filed with the Court and also served on Class Counsel and counsel for Defendant. To be effective, any such objections must be in writing, and must be filed and served no later than the Opt-Out Date. Any objections not properly and timely raised will be waived.

9. Class Members may ask the Court for permission to be heard at the Final Approval Hearing. The Court will consider such a request from a Class Member only if such a member timely files and serves a letter which states his or her notice of intent to appear in *Hoover v. Hi-Tech Pharmacal Co., Inc.,* case number 5:13-cv-00097-JGP-OP, and includes the Class Member's name, current address, telephone number, and signature. To be timely, a Notice of Intent to Appear must be filed and served by the Opt-Out Date. Any Class Member who fails to file and serve a timely written Notice of Intent to Appear shall be foreclosed from speaking at the Final Approval Hearing, unless otherwise ordered by the Court.
10. Class Counsel's motion for an award of attorneys' fees and costs shall be filed no later than January 13, 2014.
11. The Court will hold a Final Approval Hearing on Monday, March 24, 2014 at 9:00am in Courtroom 1 of this Courthouse before the undersigned to consider the fairness, reasonableness and adequacy of the proposed Settlement as well as the award of attorneys' fees and costs to Class Counsel and incentive award to the Settlement Class Representative. The foregoing date, time, and place of the Final Approval Hearing shall be listed in any notice published to the Settlement Class, but shall be subject to change by the Court. The Court reserves the right to adjourn or continue the Final Approval Hearing without further notice to the Class Members.
12. At least twenty calendar days before the Final Approval Hearing, counsel shall jointly cause to be served and filed a sworn statement attesting to the parties' compliance with the Notice Plan and any modifications made by the Court herein.
13. The Court may, for good cause, extend any of the deadlines set forth in this Order.

**IT IS SO ORDERED.**