1  NEWPORT TRIAL GROUP
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@trialnewport.com
3  Ryan M. Ferrell, Bar No. 258037
   rferrell@trialnewport.com
4  4100 Newport Place Drive, Suite 800
   Newport Beach, CA  92660
5  Tel: (949) 706-6464
   Fax: (949) 706-6469
6
7  Attorneys for Plaintiff and the Class

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | LINDA HOOVER, individually, and on behalf of all others similarly situated, | Case No.:  5:13-cv-00097-JGB-OP |

   CLASS ACTION

   **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

12              Plaintiff,

13              vs.

14 HI-TECH PHARMACAL CO., INC., an entity of unknown origin; and DOES 1-25, Inclusive,

   **(Declarations of Ryan M. Ferrell, Scott J. Ferrell, and Julie Green; [Proposed] Order filed concurrently herewith)**

16              Defendants.

   Date:      March 24, 2014
   Time:      9:00 a.m.
   Crtrm.:    1

19     **TO THE COURT AND TO ALL PARTIES AND THEIR RESPECTIVE**

20 **ATTORNEYS OF RECORD:**

21     **PLEASE TAKE NOTICE** that on March 24, 2014, at 9:00 a.m. or as soon

22 thereafter as the matter may be heard in the Courtroom of the Honorable Jesus G.

23 Bernal, United States District Court, Central District of California, Plaintiff Linda

24 Hoover ("Plaintiff") will and hereby does move the Court, pursuant to Federal Rule of

25 Civil Procedure 23(e), for an Order finally approving the class action settlement in this

26 case.

27     This motion is made on the grounds that the proposed settlement is fair,

28 adequate, and reasonable; that the Notice Plan complied with applicable legal

standards; and that the Class continues to satisfy the requirements of class certification.

This motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the accompanying Memorandum of Points and Authorities, the declarations filed in support thereof, the pleadings and papers on file in this action, and such additional evidence or argument as may be accepted by the Court at or prior to the hearing on this motion.

Respectfully submitted,

Dated:  January 13, 2014

NEWPORT TRIAL GROUP
A Professional Corporation

By: */s/Ryan M. Ferrell*
     Ryan M. Ferrell
     Attorney for Plaintiff and the Class

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION.................................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY............................................................3

III.  TERMS OF THE SETTLEMENT AGREEMENT ....................................................4

   A.   Class Member Relief .........................................................................................4

     1.   Monetary Relief.......................................................................................4

     2.   Monetary Relief.......................................................................................5

   B.   Narrowly Tailored Release ................................................................................5

   C.   Claims Administration and Class Notice............................................................5

IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE  .................6

   A.   Standard for Class Action Settlement Approval  ..............................................6

   B.   The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness .................................................6

   C.   The Settlement Is Fair, Adequate, and Reasonable ............................................7

     1.   Strength of Plaintiff's Case ......................................................................7

     2.   Risk and Expense of Further Litigation ....................................................9

     3.   Amount Offered in Settlement .................................................................9

     4.   Stage of Proceedings .............................................................................10

     5.   Experience and Views of Counsel ..........................................................11

     6.   Reaction of Class Members to the Proposed Settlement ..........................12

V.    THE NOTICE PLAN COMPLIED WITH APPLICABLE LEGAL STANDARDS 12

   A.   Manner of Notice  ...........................................................................................12

   B.   Form and Content of Notice .............................................................................14

1

## **TABLE OF CONTENTS (Continued)**

2

**Page(s)**

3
VI.     THE COURT HAS ALREADY CLEARLY WEIGHED IN ON THE

4
SETTLEMENT CLASS IN THE PRELIMINARY APPROVAL ORDER .................. 15

5
VII.    CONCLUSION ...................................................................................... 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)..................................................................................13

*Chavez v. Nestle USA, Inc.,*
  No. CV 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011) ........................8

*Churchill Vill., L.L.C. v. Gen. Elec.,*
  361 F.3d 566 (9th Cir. 2004) ....................................................................2, 6, 7

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ...................................................................6

*Delarosa v. Boiron,*
  Case No. 10-cv-1569-CBO, 2012 WL 8716658 (C.D. Cal., Dec. 28, 2012).8, 10

*Delarosa v. Boiron,*
  Case No. 10-cv-1569-CBO (CWx) (C.D. Cal. 2010)...................................8, 10

*Delarosa v. Boiron,*
  Case No. 10-cv-1569-CBO (CWx) (C.D. Cal. 2010).....................................11

*Delarosa v. Boiron,*
  Case No. 10-cv-1569-CBO (CWx), (C.D. Cal. 2010).....................................10

*Fraker v. Bayer Corp.,*
  No. CV F 08-1564, 2009 WL 5865678 (E.D. Cal. Oct. 6, 2009).......................8

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ...................................................................6

*Kirkorian v. Borelli,*
  695 F.Supp. 446 (N.D. Cal. 1988)...............................................................11

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th. Cir. 2012) ....................................................................1, 6

*Marshall v. Holiday Magic, Inc.,*
  550 F.2d 1173 (9th Cir. 1977) ...................................................................12

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

*Mullane v. Central Hanover Bank & Trust Co.,*
   229 U.S. 306 (1950)...............................................................13

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) .............................................1, 6, 12

*Nat'l Super Spuds v. New York Mercantile Exchange,*
   660 F.2d 9 (2d Cir. 1981)........................................................5

*Neal v, Naturalcare, Inc.,*
   Case No. 12-cv-531-DOC(OPx) (C.D. Cal. 2012).........................8, 11

*In re Tableware Antitrust Litig.,*
   484 F.Supp.2d 1078 (N.D. Cal. 2007) .....................................13

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ..................................................6

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982)......................................................11

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) ..................................................8

**State Cases**

*Acuna v. Hylands, Inc.,*
   Case No. CIVDS 1110816 (San Bernardino Superior Court).................8, 11

*Colgan v. Leatherman Tool Group, Inc.,*
   135 Cal.App.4th 663 (2006) ..................................................8

*Kwikset Corp. v. Superior Court,*
   246 P.3d 877 (Cal. 2011) .......................................................9

*Lazar v. Superior Court,*
   12 Cal.4th 631 (1996) ...........................................................9

*Nelson v. Pearson Ford Co.,*
   112 Cal. Rptr. 3d 607 (Ct. App. 20120) ..................................9

# <u>TABLE OF AUTHORITIES (CONTINUED)</u>

**Page(s)**

*Penich v. Historical Remedies, LP,*
  Case No. LC 096608 (Los Angeles Superior Court) ....................................8, 11

*Sandoval v. Hylands, Inc.,*
  Case No. CIVDS 1201442 (San Bernardino Superior Court) ........................8, 11

**State Statutes**

Cal. Civ. Code §§ 1770 *et seq.* ...........................................................................1

Cal. Civ. Code § 1781 .......................................................................................13

Cal. Civ. Code § 1782(d) ...................................................................................3

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ..........................................................1

Cal. Bus. & Prof. Code §§ 17500 *et seq.* ..........................................................1

CLRA ...................................................................................... 8, 9, 13, 15

FAL ............................................................................................1, 8, 15

UCL .......................................................................................8, 9, 15

**Rules**

Fed. R. Civ. Proc. 23(a) ...................................................................................15

Fed. R. Civ. Proc. 23(b) ...................................................................................15

Fed. R. Civ. Proc. 23(c)(2)(B) ................................................................ 2, 12, 14

Fed. R. Civ. Proc. 23(e) ......................................................................................7

Fed. R. Civ. Proc. 23(e)(2)..................................................................................1

Local Rule 23-3 .................................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Hi-Tech Pharmacal Co., Inc. ("Hi-Tech") is the manufacturer and distributor of a homeopathic, over-the-counter drug called Nasal Ease ("Nasal Ease"). First Amended Complaint ("FAC") ¶ 1.  Nasal Ease is labeled and advertised as a homeopathic drug intended to be used to treat allergy symptoms.  *Id.*  On December 12, 2012, Plaintiff Linda Hoover ("Plaintiff") filed this class action lawsuit against Hi-Tech, alleging that it falsely advertised the ability of Nasal Ease to relieve allergy symptoms.  Plaintiff brought causes of action on behalf of herself and a putative class of purchasers of Nasal Ease for: (1) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq.* ("CLRA"); and (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL").

After extensive negotiation, the Parties reached the Settlement Agreement. Exhibit 1 to Declaration of Ryan M. Ferrell ("R. Ferrell Decl.").

The Court granted preliminary approval of the Settlement Agreement on September 27, 2013. (Dkt. 17). Through this motion, Plaintiff now moves the Court to take the final step in approving the settlement in this case, by holding a fairness hearing and granting final approval of the Settlement Agreement.

The Settlement Agreement is fair, adequate, and reasonable, as required by Federal Rule of Civil Procedure ("Rule") 23. Fed. R. Civ. Proc. 23(e)(2); *Lane v. Facebook, Inc.,* 696 F.3d 811, 818 (9th. Cir. 2012).  As an initial matter, the settlement was not reached through fraud, overreaching, or collusion by the negotiating parties, and therefore is entitled to a presumption of fairness. *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Furthermore, the settlement provides complete relief to all Class Members who made a valid claim, in the form of a refund in one of two amounts based upon the Class Member's level of proof for purchasing Nasal Ease. Class Members with a receipt will receive a full refund of their

purchase price, and those with no proof of purchase but who swear or affirm that they purchased Nasal Ease during the Class Period will receive $5.00 per purchase, with a cap of $15.00 per household.  Second, with respect to monetary relief, the Settlement Agreement requires Hi-Tech to make changes to the label of Nasal Ease; it must add a disclaimer which states that the claims made regarding Nasal Ease are based upon traditional principles of homeopathy so as to inform a consumer as to the basis of Nasal Ease's indications for use and to avoid the confusion complained of by Plaintiff.

In light of the factors courts must weigh when evaluating the fairness of a settlement, *see Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) and Section IV.C, *infra*, it is evident that final approval of the Settlement Agreement is warranted.

The Class Notice Plan in this case constituted "the best notice that is practicable under the circumstances." Fed. R. Civ. Proc. 23(c)(2)(B). It involved notice by publication via print and Internet, including publication in several widely circulated California newspapers and magazines, Internet banner advertisements on the 24/7 Global Alliance Network, and information on a Case Website and toll-free telephone number. The Notice Plan complied and continues to comply with the plan that was originally approved by the Court and disseminated to the Class following class certification (*see* Dkt. 17) and satisfied all applicable legal standards.[1]

Finally, the Court has already preliminarily certified the Class in this case, which is defined as: "All persons within the United States, who purchased Nasal Ease for personal use between April 1, 2010 and the Opt-Out Date, and were domiciled or resided in the United States at the time of purchase." *See* Dkt. 17.  Plaintiff requests that the Court grant final approval on behalf of the above Class, which continues to meet all

---

[1] As the claims process is still in progress and does not close until February 25, 2014, and, in accordance with the Court's Order Granting Preliminary Approval of Class Action Settlement (Dkt. 17), the Parties will submit a joint statement affirming that the Notice Plan was fully and completely implemented and updating the Court as to the statistics of the claims and exclusions.

of the requirements of class certification.

## II.   **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff originally filed this class action lawsuit in the Superior Court for the County of San Bernardino.  Hi-Tech removed the case to this Court on January 15, 2013.  Dkt. 1.  The crux of Plaintiff's complaint was that Hi-Tech falsely advertised its homeopathic drug Nasal Ease as able to relieve allergy symptoms, including "sneezing", "runny nose", and "sinus congestion." Compl. ¶ 1.  Plaintiff alleged that Hi-Tech's claims of efficacy for Nasal Ease were false and misleading because the indications for use claims are based upon homeopathic practice and contrary to scientific evidence. *Id.* ¶¶ 1; 11-17.

On April 15, 2013, after a number of negotiation sessions, Plaintiff and Defendant ("the Parties") began to formulate the skeleton of certain portions of an envisioned settlement to this action, and as such, jointly stipulated to stay the case in order to further explore and potentially craft a settlement.  Dkt. 8.  The Court granted the Parties' stipulation and stayed the case pending the outcome of further settlement negotiations.  Dkt. 9.  On June 14, 2013, after numerous further settlement negotiations, the Parties reached a settlement in principle and filed a Notice of Settlement.  Dkt 10.  As part of the settlement in principle and pursuant to California Consumers Legal Remedies Act, Civil Code § 1782(d), Plaintiff agreed to and did amend her Complaint.  Dkt. 11.  The FAC expanded the class definition to include not only California consumers who purchased Nasal Ease within the Class Period, but consumers nationwide who purchased Nasal Ease within the Class Period. FAC ¶ 18; Dkt. 11.  With a settlement in principle, the Parties then worked extensively on and produced the finalized Settlement Agreement and Notice Plan.  Exhibit 1 to R. Ferrell Decl.  In addition to the refunds to Class Members described above and in further detail herein, the Settlement Agreement provides that Plaintiff may make an application to the Court for an incentive award of up to $2,500 for her service as the class representative and

1   attorneys' fees and costs not to exceed $250,000.[2]  Settlement Agreement, § 9.1.  These

2   amounts were agreed to and negotiated only after the parties reached a final agreement

3   on the substantive relief to the Class. R. Ferrell Decl. ¶ 5.

4       Plaintiff was prepared to file her motion for class certification, including expert

5   declarations, on April 15, 2013, pursuant to Local Rule 23-3.  R. Ferrell Decl. ¶ 6.

6   Prior to April 15, 2013, the Parties had already exchanged mutually agreeable dates for

7   the depositions of Plaintiff and Plaintiff's experts.  *Id*.  Aside from the proposed

8   depositions, Plaintiff's counsel had prepared extensive written discovery that it also

9   postponed serving while exploring a potential class settlement.  *Id*.

10  **III.   TERMS OF THE SETTLEMENT AGREEMENT**

11      The Settlement Agreement provides comprehensive relief to the Class. It

12  establishes a claims-made settlement, in which all eligible Class Members who submit

13  a valid claim will receive a refund. It also provides monetary relief in the form of

14  modifications to the Nasal Ease label. The material terms of the Settlement Agreement

15  are set forth below.

16      **A.   Class Member Relief**

17          **1.   Monetary Relief**

18      The Settlement Agreement calls for Hi-Tech to provide a refund to all Class

19  Members who submit a valid Claim Form within the Claim-In Period (which is

20  currently ongoing and ends on February 25, 2014). The refund will be in one of two

21  amounts, determined as follows: (1) any Claimant who provides a receipt for his or her

22  purchase of Nasal Ease will receive a full refund of the amount shown on the receipt

23  and (2) any Claimant who did not provide a proof of purchase but who swore or

24  affirmed that he or she purchased Nasal Ease during the Class Period will receive a

25

26

27  [2] The Settlement Agreement's provisions regarding attorneys' fees, costs, and the class
    representative incentive award are detailed in Plaintiff's Motion for Attorneys' Fees,
    Costs, and Incentive Award.

28

refund of $5.00 per purchase, with a cap of $15.00 per household.[3] Settlement Agreement § 4.2.3.

### 2. Monetary Relief

The Settlement Agreement also provides monetary relief to the Class by requiring Hi-Tech to make changes to the Nasal Ease label. Hi-Tech will place a new Disclaimer on the Nasal Ease label, which will read: "These statements are based on traditional principles of homeopathy." *Id.* § 4.1.2. This disclaimer is important because the entirety of Plaintiff's allegations is premised on the idea that Hi-Tech misled consumers because Nasal Ease's indications for use are not based on scientific evidence, but instead on traditional principles of homeopathy. Compl. ¶¶ 1; 11-17. The disclaimer will appear on the outer package panel of Nasal Ease in a font size no smaller than the smallest font used elsewhere on the package, in a readable color. Settlement Agreement, § 4.1.2.1.

### B. Narrowly Tailored Release

The Settlement Agreement contains a narrowly tailored Class Member release that is specifically limited to the claims arising out of or relating to the FAC, between April 1, 2010 and the Opt-Out Date. *Id.* § 6.1. Significantly, the release specifically excludes claims for personal injury. *Id.*

The release comports with the applicable law, which holds that a class action lawsuit may release all claims "that may arise out of the transactions or events pleaded in the complaint." Conte & Newberg, 4 Newberg on Class Actions ("Newberg"), § 12:15 (4th ed. 2010); *Nat'l Super Spuds v. New York Mercantile Exchange,* 660 F.2d 9, 16-18 (2d Cir. 1981).

### C. Claims Administration and Class Notice

The Settlement Agreement required Hi-Tech to pay all costs and expenses of administering the settlement and providing Notice to the Class. Settlement Agreement §

---

[3] This represents a significant amount considering that the sale price of Nasal Ease averages approximately $10.00. Dkt. 1 (Notice of Removal ¶ 28).

5.1.   As provided in the Settlement Agreement, and as approved by the Court, the claims administration and notice were handled by CPT Group Class Action Administrators ("CPT"), an independent settlement administrator that has expertise in administering class claims. (*See* Dkt. 17.) The Class Notice Plan involved notice by publication, primarily in newspapers and magazines and via the Internet. The specifics regarding the Notice Plan are set forth in detail in Section V below.

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.   Standard for Class Action Settlement Approval

The law favors the compromise and settlement of class action lawsuits. *See, e.g., Churchill Vill.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Indeed, "there is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The decision to approve or reject a settlement is committed to the sound discretion of the trial court because it "is exposed to the litigants and their strategies, positions and proof." *Lane*, 696 F.3d at 818 (9th. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). However, in exercising such discretion, the trial court should give "proper deference to the private consensual decision of the parties. . . [T]he court's intrusion upon what is otherwise a private consensual agreement . . . must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027.

### B.   The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness

Before approving a class action settlement, the trial court must be satisfied that the agreement is not the product of fraud, overreaching, or collusion. Where a settlement is reached following arm's-length negotiations, it is presumed to be fair. Newberg, § 11.41 (4th ed. 2011); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528.

As stated above, the settlement here was reached after significant and extensive negotiations.  Plaintiff had fully prepared her Motion for Class Certification, including expert declartaions, had prepared extensive written discovery, and the Parties had exchanged dates for the depositions of Plaintiff and her experts.  R. Ferrell Decl. ¶ 6. These negotiations included dozens of sessions over months of negotiations. R. Ferrell Decl. ¶ 5.   The parties had hard-fought negotiations that lasted months before they finally executed the Settlement Agreement. *Id.* ¶ 7. They did not negotiate attorneys' fees and costs until after an agreement on the relief to the Class was reached. *Id.* ¶ 5. Therefore, the proposed Settlement Agreement is informed by Plaintiff's thorough investigation, discovery efforts, and prepared motion practice. It was not the product of fraud, overreaching, or collusion by the negotiating parties, and as a result, is presumptively fair.

**C.**     **The Settlement Is Fair, Adequate, and Reasonable**

Rule 23(e) requires a district court to ensure that a proposed class action settlement is fair, adequate, and reasonable. In making this determination, the court must weigh a number of factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., 361 F.3d at 575; see also Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993). Consideration of these factors supports final approval of the settlement in this case.

**1.**     **Strength of Plaintiff's Case**

While Plaintiff's counsel has been able able to defeat motions for judgment on the pleadings and obtain class certification in similar class actions involving

homeopathic drugs[4], there was no guarantee that Plaintiff would prevail on the merits of her claims. In fact, Plaintiff expected that Hi-Tech would raise issues regarding Plaintiff's standing to continue this litigation based on the court's holding in *Delarosa v. Boiron*, Case No. 10-cv-1569-CBO (CWx), 2012 WL 8716658 at *5 (C.D. Cal., Dec. 28, 2012), that plaintiff lacked standing to seek monetary relief.

In order to prevail on her CLRA, UCL, and FAL claims, Plaintiff would have to demonstrate that Hi-Tech's advertising of Nasal Ease was likely to mislead a reasonable consumer. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).   Claims under these consumer protection statutes are all governed by the "reasonable consumer" test, which requires plaintiffs to prove that members of the public are likely to be deceived. *Id.*; *see also Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 679-80 (2006). Plaintiff's argument in this case was that Hi-Tech's advertising of Nasal Ease was likely to mislead members of the public because it promised relief from allergy symptoms but did not provide such relief.  The basis for Plaintiff's argument was that the preparation and dilution of Nasal Ease's ingredients was contrary to accepted scientific principles and had never been shown to be an effective treatment.  Defendant would likely counter at trial that Plaintiff's claim was a "lack of substantiation" argument, which has been found insufficient under California consumer protection law. *See, e.g.*, *Chavez v. Nestle USA, Inc.*, No. CV 09-9192, 2011 WL 2150128, at *5-6 (C.D. Cal. May 19, 2011); *Fraker v. Bayer Corp.*, No. CV F 08-1564, 2009 WL 5865678, at *8-9 (E.D. Cal. Oct. 6, 2009)  It would also be expected that Hi-Tech would maintain that its representations of the efficacy of Nasal Ease were true. These would be highly contentious issues involving intensive expert discovery and

---

[4] See *Sandoval v. Hylands, Inc.*, Case No. CIVDS 1201442  (San Bernardino Superior Court); *Acuna v. Hylands, Inc.*, Case No.  CIVDS 1110816 (San Bernardino Superior Court); *Delarosa v. Boiron*, Case No. 10-cv-1569-CBO (CWx) (C.D. Cal. 2010); *Neal v. Naturalcare, Inc.*, Case No. 12-cv-531-DOC(OPx) (C.D. Cal. 2012); *Penich v. Historical Remedies, LP,* Case No. LC 096608 (Los Angeles Superior Court); and *Rosendes v. Green Pharmaceuticals,* CIVDS 1108022 (San Bernardino Superior Court).

1    testing, and there is no way to predict which way a jury would find.

2          Because the UCL claim sounds in fraud[5], in order to prevail on her UCL claim,

3    Plaintiff would have to establish all five elements of fraud: (1) misrepresentation; (2)

4    knowledge of falsity; (3) intent to defraud, *i.e.,* to induce reliance; (4) justifiable

5    reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638

6    (1996).  This is also true of Plaintiff's CLRA claim. *Nelson v. Pearson Ford Co.,* 112

7    Cal. Rptr. 3d 607, 638 (Ct. App. 20120).   Particularly noteworthy here are the second

8    and third elements of knowledge of falsity and intent to deceive, which are additional

9    requirements that go beyond what is necessary to prove a false advertising claim.  Hi-

10   Tech would certainly argue at trial that even if its advertising of Nasal Ease was found

11   "likely to mislead a reasonable consumer," it had no knowledge of falsity or intent to

12   deceive.  There is no guarantee that Plaintiff would prevail.

13                    **2.    Risk and Expense of Further Litigation**

14          In light of the relative strength of Plaintiff's claims and Hi-Tech's defenses,

15   Plaintiff faced the risk of obtaining nothing if she continued to pursue this litigation.

16   Moreover, continuing to litigate this case would prove to be costly for both parties. The

17   parties, their counsel, and their experts would have to spend considerable time and

18   resources preparing and arguing various motions, conducting discovery, and preparing

19   for trial. Plaintiff, especially, would have to conduct scientific testing and analysis and

20   present significant expert testimony regarding the efficacy of Nasal Ease. In recognition

21   of these potential risks and costs, the parties engaged in active settlement talks before

22   they entered into the Settlement Agreement.  Through informed, arm's-length

23   negotiations, the parties decided to reach a compromise rather than continue the

24   litigation.

25                       **3.    Amount Offered in Settlement**

26          The Settlement Agreement provides substantial relief for the Class that gives

27   _____

28   [5] *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 (Cal. 2011).

Class Members multiple avenues to financial recovery and relief moving forward in perpetuity.   The Parties estimated that Hi-Tech sold approximately 300,000 units of Nasal Ease during the Class Period. Settlement Agreement § 4.2. Hi-Tech agreed to pay a refund for these purchases to every Class Member who made a valid claim within the Claim-In Period. *Id.* § 4.2.1. Class Members could receive a refund in a variety of ways, if they provided a receipt of their purchase of Nasal Ease, or if they swore or affirmed that they purchased Nasal Ease during the Class Period. *Id.* § 4.2.3. The amounts to be paid out to Class Members would not be diminished by any attorneys' fees, costs, or incentive award, since these would all be paid separately from the relief to the Class. *Id.* § 9.2. In addition, Hi-Tech agreed to provide monetary relief in the form of changes to the Nasal Ease label.   Settlement Agreement § 4.1. This is significant accomplishment since the Court in *Delarosa* found that the plaintiff could not seek monetary relief on behalf of herself and the Class.   *Delarosa v. Boiron*, Case No. 10-cv-1569-CBO (CWx), 2012 WL 8716658 at *5 (C.D. Cal., Dec. 28, 2012).   Hi-Tech also agreed to pay all costs and expenses associated with administering the settlement and providing Notice to the Class. Settlement Agreement § 5.1.   As of the date of this filing, these amounts were estimated to total approximately $200,000.00. Declaration of Julie Green ("Green Decl.") ¶ 17. When viewed in light of the risks and costs of further litigation, these benefits constitute an exceptional result for the Class.

### 4.   Stage of Proceedings

Before entering into the Settlement Agreement, the parties were prepared to proceed with a contested class certification motion, in fact, Plaintiff had prepared her motion for class certification, including expert declarations, and had prepared extensive written discovery.  R. Ferrell Decl ¶ 6.  The Parties had exchanged proposed dates for depositon of Plaintiff and her experts.  *Id.*  Further, Defendant was undoubtedly aware that Plaintiff's counsel has already been successful in similar class actions involving homeopathic drugs as Defendant's counsel had served as local counsel for defendant Boiron in the *Delarosa* case.  *Delarosa v. Boiron*, Case No. 10-cv-1569-CBO (CWx),

(C.D. Cal. 2010).

### 5.   **Experience and Views of Counsel**

When counsel who recommend approval of a settlement are competent and experienced, their opinion should be given significant weight. *See Kirkorian v. Borelli*, 695 F.Supp. 446, 451 (N.D. Cal. 1988); *Weinberger v. Kendrick*, 698 F.2d 61, 75-76 (2d Cir. 1982) (affording great weight to opinion of competent and experienced counsel in favor of approval of settlement). In the instant case, the Class was represented by counsel with years of experience in class action litigation and who have entered into numerous substantial settlements. Declaration of Scott Ferrell ("S. Ferrell Decl.") ¶¶ 2-9. As previously discussed, Newport Trial Group ("NTG") lawyers Ryan M. Ferrell and Scott J. Ferrell have brought and litigated the only six cases involving the efficacy of homeopathic drugs that have proceeded past contested class certification and all six have been granted class certification. *See Sandoval v. Hylands, Inc.*, Case No. CIVDS 1201442  (San Bernardino Superior Court); *Acuna v. Hylands, Inc.*, Case No.  CIVDS 1110816 (San Bernardino Superior Court); *Delarosa v. Boiron*, Case No. 10-cv-1569-CBO (CWx) (C.D. Cal. 2010); *Neal v, Naturalcare, Inc.*, Case No. 12-cv-531-DOC(OPx) (C.D. Cal. 2012); *Penich v. Historical Remedies, LP,* Case No. LC 096608 (Los Angeles Superior Court); and *Rosendes v. Green Pharmaceuticals,* CIVDS 1108022 (San Bernardino Superior Court).  Plaintiff's counsel litigated and is lead counsel in all six of the preceding certified class actions.  R. Ferrell Decl. ¶ 10.   While other litigation involving the efficacy of homeopathic drugs has been brought and is currently pending, no case involving the efficacy of a homeopathic drug has been certified in contested class certification other than the previously mentioned six cases. *Id.*

NTG has put forth time, resources, and experience in representing Plaintiff and the Class, and continue to be well-qualified and adequate to serve as Class Counsel. S. Ferrell Decl. ¶ 9.  Class Counsel entered into the Settlement Agreement only after conducting a thorough investigation into the factual and legal issues raised in this case

and after extensive negotiations. R. Ferrell Decl. ¶ 5.  Based upon their experience in similar class action cases, Class Counsel view the Settlement Agreement favorably.  *Id.*

### 6.   <u>Reaction of Class Members to the Proposed Settlement</u>

A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528. Despite the fact that the claims period is only half completed, over 2,000 Class Members have made claims thus far.  The current claims can be compared to only one Class Member requesting exclusion. Green Decl. ¶ 13.  Further bolstering the favorable reaction of the class is the fact that the single exclusion comes from a current inmate in federal prison in Texas who is currently serving a twenty (20) plus year sentence for mail fraud and identity theft.  The prisoner claims to have purchased 108 units of Nasal Ease over a three year period during the Class Period at Walgreens, Rite Aid, CVS, and Walmart, despite being incarcerated during all but five months of the Class Period.  R. Ferrell Decl. ¶ 11; Exhibits 2, 3 to R. Ferrell Decl.  Further detracting from the credibility of the sole exclusion is his willingness to waive his exclusion if the receipt requirement of the Class Notice is waived for him and if his demand of for over $1,500.00 is met.  *Id.*

As explained in greater detail in Section V below, the claims rate in this case has been robust and higher than the average claims rate in similar class action settlements. Green Decl. ¶ 18. The Class has had an overwhelmingly positive reaction to the settlement, which further supports final approval.

## V.   <u>THE NOTICE PLAN COMPLIED WITH APPLICABLE LEGAL STANDARDS</u>

### A.   <u>Manner of Notice</u>

Under the Federal Rules of Civil Procedure, notice to the class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc.

23(c)(2)(B); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Mullane v. Central Hanover Bank & Trust Co.*, 229 U.S. 306, 314 (1950). Where the identity of specific class members is not reasonably available, notice by publication is an acceptable method of providing notice. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007) (citing *Manual for Complex Litigation* § 21.311 (4th ed. 2004)); Cal. Civ. Code § 1781 (authorizing notice by publication under the CLRA "if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally").  Here, Hi-Tech did not directly sell Nasal Ease to Class Members, so it did not possess contact information all but thirty-five (35) Class Members.[6]  Green Decl ¶ 5.  Because the majority of Class Members' identities were not known, the Class Notice Plan featured notice by publication, utilizing the dual platforms of print and Internet. The Court set the Notice Date—*i.e.,* the date by which the Notice had to be published in a newspaper of general circulation in California—as October 28, 2013. (Dkt. 17).  By October 25, 2013, CPT established the Case Website with the domain name, www.nasaleasesettlement.com. Green Decl. ¶ 8. The website contained the Settlement Agreement, Class Notice, the Court's Preliminary Approval Order, and the necessary documents to file a claim, opt out, and/or object to the settlement. Green Decl ¶ 9. The website also provided this information in Spanish. *Id*. By October 25, 2013, CPT also established a toll-free telephone number which provided information about the settlement and allowed Class Members to request Notice packets. *Id*. ¶ 8.

On October 25, 2013, CPT issued an informational press release announcing the settlement to more than 10,000 press outlets throughout California. *Id.*  Also on October 25, 2013, CPT caused the Summary Notice to be published in the *USA TODAY. Id.* ¶ 8. The Summary Notice was published for four consecutive weeks in the *USA Today* on October 25, 2013, November 1, 8, 15, 2013.  *Id*.  Finally, the Summary Notice was

---

[6] These thirty-five Class Members were sent Notice Packets via first class mail.  Green Decl. ¶ 7.

published in the January/February editions of *Natural Health* and *Health* magazines. *Id*. With respect to Internet notice, beginning on November 15, 2013, CPT caused Internet banner notices to appear on the 24/7 Real Media Group. Green Decl ¶ 10. As of the date of this filing, those banners resulted in 17,998,561 unique impressions. *Id*.

The above Notice Plan exceeded that which was originally approved by the Court and disseminated to the Class following class certification (*see* Dkt. 17) and has resulted thus far in a total of 2,471 claims filed as of January 8, 2014. Green Decl ¶ 15. Of these claims, fourteen were filed with a receipt for the Class Member's purchase of Nasal Ease entitling them to $433.67 in damages (the sum of the amounts shown on the receipts) and 2,457 were filed with no proof of purchase but under penalty of perjury entitling them to $32,2950.00 in damages ($5.00 per purchase, with a cap of $15.00 per household). Based upon the parties' estimate that Hi-Tech sold approximately 300,000 units of Nasal Ease during the Class Period, the fact that the Notice Period is only half completed, and the 2,471 claims received to date, the Parties expect approximately 3,000 to 5,000 claims. 3,000 to 5,000 claims in this case represent a claims rate range of 1.0% to 1.7%. This rate is likely even higher, since it assumes that each Class Member purchased only one of the 300,000 units sold (in reality, many Class Members purchased multiple units). Even the conservative range of 1.0 to 1.7% claims rate is especially high in a case of this type, involving a consumer product where direct mail notice is unviable and Class Members are reached through a consumer media campaign. Green Decl ¶ 18 (stating that the claims rate in similar class action settlements often have a claims rate of less that one percent (1.0%) and the median claims rate for similar class actions recently administered by CPT was 0.36%). Considering the above, Class Counsel submits that the Notice Plan in this case was more than adequate and complied with applicable legal standards.

**B.**   **Form and Content of Notice**

Regarding the form and content of notice, Rule 23(c)(2)(B) requires that:

> The notice must clearly and concisely state in plain, easily

understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Claim Form, Long Form Notice, and Summary Published Notice (collectively "Summary Notices") satisfied the above requirements. Each of the Summary Notices provided a clear and concise explanation of the case, the Class definition, a summary of the lawsuit, the rights of Class Members to retain an attorney, the rights and procedures for Class Members to exclude themselves, and the binding effect of the settlement on the Class Members. *See* Settlement Agreement, Exs. A-C (attached as Ex. 1 to the R. Ferrell Decl.).

## VI. THE COURT HAS ALREADY CLEARLY WEIGHED IN ON THE SETTLEMENT CLASS IN THE PRELIMINARY APPROVAL ORDER

On September 27, 2013, the Court granted Preliminary Approval of Class Action Settlement. (Dkt. 17). The Court stated that the proposed class met the requirements of Rule 23(a) and Rule 23(b) stating, in part:

- [The Class] resolves an issue common to all the class members' claims.
- The named plaintiff suffered substantially the same alleged injury as the other class members.
- [T]he same legal theory underlies the claims of all the class members, namely violations of the UCL, CLRA, and FAL.
- Counsel's experience litigating consumer class actions and their time spent researching Nasal Ease and applicable law satisfies the adequacy of representation prong.
- [T]he class definition uses objective criteria that are verifiable from the submitted Claim Forms.
- [C]lass members do not stand to recover more than the amount they paid for [Nasal Ease].

1    • [Individual litigation by Class Members] is unlikely that individual litigation

2    would be worth the expense.

3    All of the elements of class certification in this case remain satisfied, and Plaintiff

4    requests that final approval be granted on behalf of the above Class.

5    **VII.   CONCLUSION**

6    For all of the foregoing reasons, Plaintiffs respectfully request that the Court

7    grant Plaintiff's Motion for Final Approval.

8

9    Dated:  January 13, 2014              NEWPORT TRIAL GROUP

10                                         A Professional Corporation

11

12

13                                         By:*Ryan M. Ferrell* _____

14                                            Ryan M. Ferrell

                                             Attorney for Plaintiff and the Class

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2014, I electronically filed the foregoing **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/Ryan M. Ferrell*
Ryan M. Ferrell